May it please the court, my name is Elsa Martinez and I represent the petitioner, Xiomara Rodriguez, and she is present in court today with family. I would like to reserve two minutes for rebuttal. Our request is that this court grant the petition and determine that Ms. Rodriguez is not inadmissible for the following reasons. The BIA's conclusory finding that she admitted to alien smuggling is not supported by the record. Two, the BIA erred in placing the burden on Ms. Rodriguez because the allocation of the burden of proof is not dispositive of the ultimate question of inadmissibility. The BIA's reversal of the IJ's findings are in violation of their own regulation because they did not apply a clearly erroneous standard. And lastly, the facts in this case do not amount to alien smuggling. Your Honors, the BIA's decision rests solely on a statement which they indicate that Ms. Rodriguez admitted to alien smuggling. There's nowhere in the record, in the certified administrative record, that she in fact did that. Well, let's look at AR 340, where she says, I was doing a favor with my children's birth certificate, and later says to the judge, I was doing a favor. That's the first person singular. She was doing something. That's not simply a suggestion that somebody else used the birth certificate. She was doing something. And it's hard for me to understand what else she thought she could have been doing. You don't ordinarily carry a birth certificate across the border unless you're planning to use it for identification purposes as a citizen. She knew it wasn't her daughter who was with her. So how is it that's not sufficient evidence to support a finding that she participated in alien smuggling? Yes, Your Honor. This Court has determined that alien smuggling is a continuous process. It's not a one-time incident or event. You can be guilty of alien smuggling by doing it just once with one person. Correct. There's no requirement that you be involved in some scheme, taking a large number of people across, or do it repeatedly. That's correct. But there has to be an affirmative act. There has to be knowledge. Let's get real here. What else could have been involved? If she says she was doing a favor with the birth certificate, what else could the birth certificate be used for? What kind of favor was she doing other than permitting somebody else to claim to be a U.S. citizen? Well, this Court has held in Altamirano and Aguilar that merely facilitating a birth certificate isn't sufficient to find somebody. But this is beyond that, right? She's using the language of affirmative action. I was doing a favor. Doing. Actively doing. I thought it was easy to do it with my child's birth certificate. She's doing. She's affirmatively doing. It's not like Aguilar-Gonzalez. Well, there's a lot of cases. There's a lot of facts that are unknown. First of all, we don't know who asked her. She said it was a friend of a friend. We don't know how much time transpired between the time she was asked to the time she was actually at the border in 1998. We don't know how many of the people were in the vehicle. What difference would any of those things make? I believe they make a difference. Why? Be specific. They make a difference because simply being in the vehicle. I don't. She said, using the first person singular, I was doing a favor with her child's birth certificate. Please give me a scenario that can reconcile that statement with something that doesn't constitute activity over the line in participating in alien smuggling. Frankly, I think your client's case is sympathetic, but I think there's a real problem here because I don't know how to reconcile that statement with a happier scenario. Let me, let me, let me, I find this case procedurally very confusing because it kept bouncing back and forth between the I.J. and the, and the B.I.A. What, she tested, she made these statements about volunteering in testimony before the I.J. Yes, Your Honor. And the I.J.'s finding with respect to that testimony was what? She found that it was legally insufficient to find that she was inadmissible. Because? Because the, Ms. Rodriguez was being cross-examined and she was giving yes and no questions. And a lot of times she was saying yes, yes, because she was acknowledging that a question was being made or placed to her. And that's what Judge DiPaolo found, that she was merely acknowledging the questions and that all of her testimony from pages, for the 10 pages that where she's being cross-examined, leave us to, led the judge to believe and to conclude that it was legally insufficient. Okay. So the, so the I.J. is there in the room watching her, hearing all the evidence. Okay. So the I.J. says it's insufficient. So it goes to the board on the government's appeal? Yes, the first time. And the board says what? The board says we're going to remand so that the I.J. can consider the testimony as to it related to the 1998 incident. And the I.J. requested a briefing from both sides, and she came to a conclusion that hadn't been properly, that hadn't been structured. And the 1998 incident was what? Is that the same incident or is it a different? This is the only incident that we're discussing. And in fact, one of the points that the judge does make, and she properly pointed out that neither counsel had pointed out, she wasn't prosecuted. In Aguilar, Altamirano, Sanchez, these people were not admitted. And the judge said, well, I don't know, too, what difference this will make. But she was already admitted once. She was admitted then in 1998. So clearly, this insinuation of her being apprehended for alien smuggling, they call it alien smuggling, but it doesn't make it so. Clearly, she was sent to secondary. Wait a minute. So it went back, the BIA sent it back to the I.J.? They did in 2008, and then it went back up to the board in 2009. And the I.J. at that point says? Legally insufficient facts. Stop. Did the I.J. say that or did the I.J. say the testimony couldn't be considered for a legal reason? Yes, Justice. She said both. She said both. She said under matter of case, I'm not going to consider it. But if I did, she does say that she finds it to be legally insufficient. And I can point to that language in her decision towards the end, right before the conclusion. Additionally, what happens is when it gets to the board, the board ignores the facts all in its entirety, and that's in violation of their own regulation. They didn't apply a clearly erroneous standard to the judge's finding. But the board said the matter of case doesn't apply. They don't. Because this was in court and she was represented by counsel, and so they didn't have to make special protections. Is that essentially what the board said? The board does say that it applies this Court's decision in Ursua. However, they go beyond that and they make a blanket statement in one sentence that says, she admitted to alien smuggling. And I don't believe that that's supported by the record. I think that by merely saying I was doing a favor, by saying I believe it was my 3-year-old's birth certificate, none of it. I don't believe the board knew it. So I come back to my question. Yes, Judge. How do you reconcile what she said, if those statements can be considered, with a scenario that doesn't amount to participating in alien smuggling? I think that she we're somewhere in between, and obviously it's for this Court to decide. We're somewhere in between Altamirano and Aguilar and Sanchez, because she, this child wasn't coming to live with her. She didn't, she, it wasn't a friend of hers. She didn't know the person's name. And we have to remember, she was admitted and there are no records, there's no direct evidence, with regards to what happened in 1998. The government presented no I-213, no fingerprint result, no CBP printout. What exactly happened in 1998? Okay, well, let me, let me just, so the board says those protections don't apply. We're going to apply the case beginning with you, and these are legally, this is legally insufficient. I'm sorry, I don't understand. Does the board say that the admissions are legally insufficient? The board doesn't discuss the facts whatsoever. And this is a, this is a clear error, because they didn't, they made their, they made their own conclusory finding and they violated their own regulations, and the regulation that I'm specifically referring to is ACFR 1000. But the conclusory finding was what? That she had admitted to alien smuggling. The other part of my argument, and I see that I'm running out of time, is the fact that they shifted, I'm sorry, that they said that it was necessary for her to prove a negative in order to determine whether she was admissible. So, in fact, they punted. They said the burden of proof is on her to prove that she did, in fact, alien smuggle. And we believe that that's wrong under the Altamirano analysis, because the ultimate determination or the legal conclusion is not dispositive. But let me ask you this. If we send it back to the board and we tell the board, you reversed the credibility or a finding of fact without anything other than a conclusory statement, and the board is still faced with this, I was doing a favor for my children's with my children's birth certificate, I thought it was easy to do it with my child's birth certificate, have we really helped you any here? No, and I believe that that's a question that the Court can make, because it's a legal conclusion. So ultimately, if you send it back to the board and the board holds it either way, either party can come back to this Court for that same determination. And I think that's a question that the Court can make, because it's a legal conclusion. And we believe that that's a question that the Court can make, because it's a legal conclusion. But we're asking is that based on the facts as stated and the lack of direct or indirect evidence and her mere questioning, that we should give much credence to the observations of the I.J. in court while she was testifying about her statements. But where did the I.J. make the observation you described to us? Why? Where? Where? You indicated you could show me where, and I see language similar to that. But I don't see – I haven't found something where the I.J. has said that factually this evidence is insufficient. Yes, Your Honor. She does indicate that she is not evasive. She finds her to be credible. And I believe that's in the I.J.'s second decision from 2009. Well, that would be helpful if she had in fact denied doing a favor with her children's birth certificate. But she was found to be a credible witness. I think it sounds like she was being honest when she said what she said, but she said what she said. But I don't believe that the case law supports it by saying I did a favor and then suddenly we're in 1998 at a port of entry, sent to secondary, but determined by the agency to be admitted. And we're supposed to fill in the facts that she said at one point she did a favor. We don't know whether it was months before, weeks or years before. Then she's at a port of entry. She's in a vehicle. We don't know if she's the only person. We know there's a minor in the back. We know that he's undocumented. And we are supposed to connect the dots and all of a sudden determine that she's inadmissible as a result of it. I believe the facts are legally insufficient to make that determination. I think this Court can make that determination. I think. We'll still give you a minute for rebuttal. When you come back, maybe you can point to the specific language in the I.J.'s decision that speaks to this. Thank you. We'll hear from the Attorney General. And Mr. Oliveira, who's having a busy day. Indeed. For the record, my name is Andrew Oliveira. On behalf of the Respondent, the Attorney General, Eric H. Holder. I'd just like to clarify a quick factual distinction. Rodriguez de Espinoza was convicted in 2004 in Federal court for alien harboring. Right. As a result of that, she was placed in immigration proceedings. She does not contest that she is removable for committing an aggravated felony. The DHS's burden has been met. She then applied for adjustment of status. She bears the burden of proving that she is admissible or not inadmissible. During her testimony, she admitted that she engaged in an act of alien smuggling. What exactly did she admit? Well, she admitted that she went to Tijuana to do a favor for a friend of a friend. She met a person, had the kid. She had her child's birth certificate. And then they went to the border where they got caught. There isn't a lot of details. But as your honors have pointed out, she does use the word I. She uses the word I a lot. At no point does she testify that she's merely a passenger. Or she went along with what someone else had done. This was I did a favor for someone. The purpose of the inquiry, though, is to impeach her, right? Correct. It's to the government asking her these questions to show that she had previously been involved in what amounted to alien smuggling. Didn't the government quit awfully soon to make that point? Why not say to her, you knew what you were doing was illegal, didn't you? Well, that would nail it, right? Well, the immigration judge did ask her some of these questions about whether or not doing something in his favor is alien smuggling. And she He went off on the subject of he was taking her response as being, well, I wasn't getting paid for it. And he said, well, that doesn't make any difference. And he took it off in that direction. But the government attorney didn't come back afterwards and elicit much more specific statements from respondent. Well, then respondent, now petitioner. But the issue is her burden of proof. She has to prove that she did not engage in alien smuggling. By what standard? Pardon? By what standard does she have to prove that? I believe it's more likely than not. The way I'm looking at it is, obviously, if the government were to rely on her admission as the sole evidence for conviction of the crime, that would fail. That would be insufficient, all right? So now you say the burden has shifted. She's got to show she didn't do it. And I think the reason you hesitated, it's hard to show you didn't do it. You still have the same basic inadequacy of the evidence for a criminal conviction as you would have for the purposes it was used here. Well- It's just not much. That's correct, but I think if we look at this court's case law, what she does describe falls well short of the passive actions that this court had found to not constitute alien smuggling. In Altamirano, the alien was simply, or the, yeah, the alien was simply present in a car while they knew an illegal alien was in the trunk. In Aguilar-Gonzalez, they simply acquiesced to a scheme to use her child's birth certificate. That's simply not the case here. She hasn't testified that she's a passenger. There was no plural use of we. It was I. I did this as a favor. I went to Tijuana. And there's no evidence whatsoever of a passive action. Don't we and the BIA owe some deference to the immigration judge who's listening to her and apparently formed a view that this was not sufficient to find that she, in fact, had engaged in the activity in an active way? Well, with respect to the board's standard of review, they do review the factual determinations and the clearly erroneous standard. But decisions as to eligibility are reviewed de novo and the board- What does that mean in English? In this case, I mean, there appears to be something of a factual determination with regard to what her role in this episode was. The board doesn't appear to review that determination if it's there by a clear error standard, does it? Well, there isn't a dispute on the facts. The facts are undisputed. Well- The testimony is- I mean, there are different ways. The Petitioner's counsel has characterized the testimony in a way differently than it arguably could be characterized. That's something the IJ would ordinarily decide in the first instance. The IJ appeared to believe that the evidence was insufficient. The BIA approached it, and we've got lots of moving parts here because perhaps the bigger part of the BIA's decision had to do with, was it a matter of Kay and our court's decision and so forth. But when you get down to the factual element, let me start with this. Did the BIA apply a clear error standard at any point? No, because they did not have to. And so if they did, if we conclude they did have to, then the wrong standard was applied. So could you tell us why they didn't have to? You started to, I interrupted you, and now I'll give you a chance to do it. Because the question wasn't, was a question of eligibility, determining whether the facts meet the definition of alien smuggling. And that is something that the Board reviews de novo, which means that they don't actually owe deference to the immigration judge's decision on whether or not it was alien smuggling. This Court reviews that decision under the substantial evidence, and the evidence in the record simply does not compel reversal of the Board's decision. So you, I'm sorry, how do you get to a finding by the Board? Because the Board can review questions of eligibility de novo. It's, and so they are allowed to take the same facts considered by the immigration judge and reach a differing conclusion without using the clearly erroneous standard. But isn't, at the risk of beating a dead horse, isn't this essentially a weighing of evidence by the immigration judge to determine what it means factually? Isn't that what happened? Right. Clearly, the immigration judge felt twice that these few lines on cross-examination were not sufficient. Correct. But the Board, when they review decisions of the immigration judge, questions of eligibility are reviewed de novo. I guess that's where I need to stop you. That's a concept I'm not familiar with. So could you provide me with some support for the proposition? I mean, to the extent that eligibility questions frequently assume factual questions, I understood the factual elements were still based on a clear air standard. You're presenting a different take on that. So what do I look to to find support for that? It's 8 CFR 1003-D4 or 2. I believe that's the regulation. Maybe in your brief, but it's the standard of, it's the Board's standard of view, which they may have cited in their decision. But the ultimate decision on whether or not the burden of the ultimate issue on eligibility is reviewed de novo. That is clear. But the underlying determinations, if there are underlying determinations of fact, they have to, they have to, they can disagree with those determinations of the I.J. only if they find that they're proven wrong. Well, the I.J. simply said that the facts don't establish alien smuggling. The immigration judge reached that conclusion. But subsumed in that, isn't it her knowledge and motivation that he's finding have not been proven? He's making factual findings that I can't tell from those few lines on cross-examination that she was actively involved and had a motive to do this. Isn't that what he's essentially, she's essentially saying? Well, again, I forgot to mention this earlier, but I would like to point out, because the petitioner is an aggravated felon, the factual determinations, including whether or not she satisfied alien smuggling, aren't before this Court. That being said, it's the specific factual findings that have to be reviewed under the clearly erroneous, but the determination as to eligibility, whether or not the facts as laid out in her testimony meet the definition of alien smuggling, that is a conclusion that is reviewed de novo by the Board. I understand that it's not the most straightforward issue. It's a squiggly line. Yes. But ultimately, the Board can look at the ultimate conclusion of eligibility de novo, but specific fact findings have to be reviewed. But in Aguilar-Gonzalez, we looked at a record that was pretty close to this and said that a finding that this was alien smuggling was not supported by substantial evidence. Well, I feel that this case actually has quite a few distinctions from Aguilar-Gonzalez. Namely, in that case, there was just – I see my time is up, but I will answer in a minute. No, I'm not talking about the facts. I'm just saying that we looked at what the I.J. did and treated it as a question of fact. That's all I'm going to stand on. But for this Court, yes, it is reviewed under the substantial evidence standard. And whether or not the evidence compels reversal, the record just simply does not support that. The reason I think you might be wrong is because once you get the facts, the application of the law, once you know her knowledge and motivation, the application of the law is straightforward. There's nothing to dispute at that point. Either she deliberately engaged or she didn't deliberately engage. And that tells you what to do with the law. So that's what makes it inherently factual to me. Well, I would simply, again, refer to the Board's standard of review. They take a slightly different approach than that, Your Honor, in that they can review the application of fact to law de novo, and they are not required to use the clearly erroneous standard. If there are no further questions, we thank you for the argument. And we'll hear rebuttal. Your Honor, at the certified administrative record, page 94, excuse me, page 96, towards the end of page 94, it says that we hold that the admissions have been, may have been made alleged to have, okay, the Court will not make any clear findings with respect to the nature of Respondent's admissions, but does hold that the admissions may have been alleged to have been made by the Respondent insufficient for this Court to hold that the Respondent was given the proper procedure of safeguards. And beyond that, that's the language I recognize, but that doesn't speak to the underlying facts. That speaks to the safeguards, and that's dealt with by the legal issue, the matter of fee, and so forth. She goes on to say the Court cannot find any admissions allegedly made by the Respondent are sufficient for a finding of inadmissibility. And she says that at page 97, right before her signature. Well, I guess it's a question of whether in doing so she's considering the statement she's already said couldn't be considered because proper safeguards weren't given. So I hear your argument. In reading the 2008 decision and the 2009 decision, that's where she continues to make that point. Then after the Board said that the safeguards don't apply. Correct. And it's our position that the Petitioner has met their burden of proof by persuading the fact finder in this case. The Court in Brazilian v. Holder, a Ninth Circuit case in 2012, and on the regulations ATFR 1003.1d3, the scope of review is that if they were going to differ from the I.J.'s findings, then they needed to do it by a clearly erroneous standard, and it should be reversed. Thank you. We thank you. We thank both counsel for your helpful arguments. The case just argued is submitted.
judges: Cogan, Schroeder, Clifton